## HANCE BAKER v. THE STATE.

### No. 3029. Decided April 8, 1914.

Rehearing denied June 3, 1914.

**Selling Liquor Without License—Retail Liquor Dealer—Club.**

Where, upon trial of selling intoxicating liquors in quantities of less than one gallon without license, the defense was that the defendant was the president of a social club, but the evidence showed that this club did not come within the rules laid down in the case of Koenig v. State, 33 Texas Crim. Rep., 367, and Adams v. State, 66 Texas Crim. Rep., 220, but is governed by the rule laid down in Trezevant v. State, 66 Texas Crim. Rep., 172, and that the club was not one who acted in good faith, the conviction must be affirmed.

Appeal from the County Court at Law of Harris. Tried below before the Hon. C. C. Wren.

Appeal from a conviction of retailing intoxicating liquors without license; penalty, a fine of $250 and one hour confinement in the county jail.

*Wood, Harris & King,* for appellant.—On question of social clubs: Cited cases in opinion.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of selling intoxicating liquors in quantities of less than one gallon without having procured a license as a retail liquor dealer in territory that was not under the operation of the local option law.

The facts, in brief, show that there was a club formed known as the Sylvan Beach Hunting, Fishing and Boating Association; that this club was located at La Porte. Subsequently they removed or organized a subordinate department near the city of Houston. Appellant was the president and treasurer, and Schultze was secretary. They had by-laws and regulations in addition to their charter, providing how membership might be obtained; it also provided for buffet accommodations for the exclusive use of the membership. It was further shown that there were several hundred members of the club, and that they became such by application in writing, the by-laws requiring that members of the club should recommend such applications. It is also shown that when a party applied for membership he immediately became entitled to the privileges of the club, at least the purchase privileges of the club, before his application had been acted upon by the board of directors. Appellant as president had charge and practically exclusive charge of all matters be-

longing to the club, including ground, houses and other matters, and that he dispensed beer to the members and applicants for membership upon their demand and to applicants before their applications had been approved by the board of directors. It is also shown that a party named Outrans, who was not a member of the club, and appellant usually recommended these applications for membership. It is further shown that some of the applicants were never registered as members. The evidence discloses that there was a saloon ran on the same grounds by another party, and that quite a lot of people would come from the city of Houston to the club grounds; that some of them were respectable people, and perhaps the majority of those who came were; that prostitutes also came with their friends; that there was a dance hall, and the business became more flourishing after 9:30 in the evening. Outrans was not a member of the club, and under the rules was not authorized to sign for or endorse the application for membership. There was a great deal of beer sold, and the parties danced and had music and all that sort of entertainment was carried on often until three o'clock in the morning. Beer was also dispensed on Sunday. It seems that the original board of directors, upon ascertaining the condition of things, resigned and other members were substituted as directors. The meeting of the board of directors seems to have been confined to appellant as president and treasurer, and Schultze as secretary. The minutes of the meeting show this, and that the other members of the board appeared by proxy. A great deal of the testimony in the record was taken from the minutes of the books kept by the secretary, Schultze. A detective named Sisk and known to appellant to be a detective and policeman at the time he joined, filed his application and paid his initiation fee. This was recommended by appellant and M. D. Outrans. It is shown that immediately upon filing this application he bought beer from appellant, this occurring immediately and before his application was voted upon. It would seem to follow as a matter of fact that wherever appellant and Outrans recommended a party, that that operated usually as an election to membership. It is unnecessary to go into a detailed statement of the facts. The fishing and hunting phases seem to have been abandoned upon the removal of its headquarters from Sylvan Beach to the point near the city of Houston.

Appellant under the evidence claims that his club had a right to sell within the rule laid down by this court in the cases of Koenig v. State, 33 Texas Crim. Rep., 367; Adams v. State, 66 Texas Crim. Rep., 220, 145 S. W. Rep., 940, and cases by the Supreme Court, Austin Club v. State, 89 Texas, 20, and Duke v. State, 137 S. W. Rep., 654. Under the facts we do not believe that this club comes within the rule laid down in those cases; but governed by the rule laid down in Trezevant v. State, 66 Texas Crim. Rep., 172, 145 S. W. Rep., 1191. These parties recommended by appellant and Outrans are not members of the club under its by-laws and regulations as we understand them. It has been the rule in Texas that a bona fide club dispensing liquors to its membership is not within the denunciation of the law requiring license to follow the

business of selling intoxicating liquors, and, therefore, would not be subject to punishment, but these clubs and organizations must be bona fide and adhere strictly to the law, otherwise the selling would be illegal. Under the testimony we fail to find where the board of directors had at any time met or passed upon these applications, unless it be the fact that appellant and Outrans, who was not a member of the organization, constituted the requisite number recommending, and at some other time appellant and Mr. Schultze would meet and ratify what they had done. The evidence does not show that the board of directors as such had any meeting. In fact, the minutes show that the only two parties who were present at those board meetings were appellant and Schultze. The minutes recite that the other directors were voting by proxy. Schultze it appears voted the proxies. This organization seems to smack too much of evasion and want of good faith.

Believing that the court trying the case entered the proper judgment, it is ordered that it be affirmed.

*Affirmed.*

[Rehearing denied June 3, 1914.—Reporter.]