## JOE WINTERMAN v. THE STATE.

### No. 3648. Decided October 13, 1915.

### Rehearing denied November 3, 1915.

**1.—Selling Intoxicating Liquors—License—Sufficiency of the Evidence.**

Where, upon trial of selling intoxicating liquors in non-prohibition territory without obtaining a license, the evidence was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Information—Motion in Arrest of Judgment.**

Where, upon trial of selling intoxicating liquors in non-prohibition territory without first obtaining a license, the information alleged that the defendant, on a certain date in the county of the prosecution, without having first obtained a license under the laws of the State of Texas, as a retail liquor dealer, did then and there in a certain locality, in said county and State, where local option was not then and there in force, unlawfully sell, directly and indirectly, to one G. intoxicating and spirituous liquors capable of producing intoxication, in quantities of one gallon and less, towit, two half pints of whisky, the same was sufficient on motion to quash, and in arrest of judgment.

**3.—Same—Information—Business—Liquor Dealer—Individual.**

Under the statute no person shall directly or indirectly sell spirituous or vinous liquors capable of producing intoxication, etc., without taking out a license, and it is not necessary to allege that the defendant engaged in the

business of selling intoxicating liquors. Following Trezevant v. State. 66 Texas Crim. Rep., 172.

#### 4.—Same—Information—Location.

Upon trial of selling intoxicating liquors in non-prohibition territory without a license, it was unnecessary to allege the specific place in the county of the prosecution where defendant made such sale, and that that place was not a specific place where he was licensed to sell, or that defendant had a license to sell at a particular place only.

#### 5.—Same—Rule Stated—Information—Violation of Liquor Laws.

In an indictment or information for selling intoxicating liquors in violation of any law of the State, it is sufficient to charge that the defendant sold intoxicating liquors contrary to law, naming the person to whom sold, and where the information charged the selling of intoxicating liquors in non-prohibition territory without obtaining a license, and followed substantially, and practically literally, the statute, the same is sufficient. Following Clark v. State, 76 Texas Crim. Rep., 348, and other cases.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of selling intoxicating liquors in non-prohibition territory without a license; penalty, a fine of $500 and one day confinement in the county jail.

The opinion states the case.

*Baskin, Dodge, Baskin & Eastus,* for appellant.—On question that it is not sufficient to merely allege the language of the statute: Fleming v. State, 62 Texas Crim. Rep., 653; McAfee v. State, 38 id., 124.

On question that information must affirmatively allege that defendant was engaged in the business of a retail liquor dealer: Cassidy v. State, 58 Texas Crim. Rep., 454, 126 S. W. Rep., 600; Viser v. State, 10 Texas Crim. App., 86; Merritt v. State, 19 id., 435; Halfin v. State, 18 id., 410; Williams v. State, 23 id., 499; Ex parte Townsend, 64 Texas Crim. Rep., 350.

On question of admitting irrelevant testimony: Anderson v. State, 14 Texas Crim. App., 49; Richards v. State, 59 Texas Crim. Rep., 203; Elkins v. State, 59 Texas Crim. Rep., 157.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of selling intoxicating liquor where prohibition was not in force, without obtaining a license.

Phil Gibson testified that he had a barbecue stand near the corner of Thirteenth and Monroe Streets in the City of Fort Worth, and had lived in Fort Worth twenty years. That appellant lived with his son, Felix Winterman, just across the street from his barbecue stand. He further testified: "On Sunday, the 18th day of April, 1915, about 9 o'clock in the morning, Dolly Chainey, a negro woman, came to my barbecue stand and gave me 40 cents, and asked me to get her a half pint of whisky. I took the 40 cents and went across the street to Felix Winterman's house, where the defendant, Joe Winterman, was

staying, and knocked on the door; the defendant came to the door and I gave him the 40 cents and told him that I wanted to get a half pint of whisky. The defendant went back into another room of the house and brought out a half pint of whisky and gave it to me, and I carried the whisky across the street to the barbecue stand and delivered it to Dolly Chainey. About 11 o'clock that same morning, Dolly Chainey came back to the barbecue stand and gave me 40 cents again and told me to get her another half pint of whisky. I went across the street again to the house where the defendant was staying and got another half pint of whisky from him and carried it across the street to the barbecue stand where Dolly Chainey was and delivered it to her. I bought a half pint of whisky from the defendant at his home on Sunday, April 4th, for 40 cents."

On cross-examination he testified: "The defendant, Joe Winterman, does not run the saloon on the corner of Thirteenth and Monroe Streets just back of which my barbecue is located; he runs a saloon on the corner of Seventeenth and Terry Streets, which is about a half or three-quarters of a mile from where my barbecue stand is located. I bought this whisky from the defendant on Sunday, the 18th day of April, A. D. 1915, in Tarrant County, Texas." Appellant's saloon was in a negro neighborhood.

E. H. Peters, a police officer of Fort Worth, testified: "About 8 o'clock on Sunday evening of the 18th day of April, I saw two negroes come out of Felix Winterman's house, where the defendant, Joe Winterman, lives; after the negroes had gotten up the street about half a block from the house, I stopped them and searched them; I found twelve half pints of whisky on one of the negroes. He had them stuffed about in all of his pockets, in his shirt bosom, and around the waistband of his pants under his coat, and the other had four half pint bottles of whisky and one quart bottle of whisky on his person."

It was agreed as follows: "It is agreed that the defendant had a liquor dealer's license on the 18th day of April, A. D. 1915, to engage in the business of a retail liquor dealer at the corner of Seventeenth and Terry Streets in the City of Fort Worth, Tarrant County, Texas, but that he did not have a license to engage in such business at any other place in Tarrant County, nor at the place where the sales were alleged to have been made in this case. It is further agreed that the sale of intoxicating liquors was not prohibited at the place where the sale of whisky herein alleged to have occurred took place."

Appellant denied making any of the sales to Gibson and testified, and had some of his kinsfolks and others to so testify, which, if believed by the jury, would have been sufficient to show an alibi. The court gave appellant's special charge submitting this question and the jury found against him.

The said two negroes the officer arrested with the whisky on them were Lovey Sparks and Willie Slaughter. Appellant had Lovey testify that both he and Willie worked for him in his saloon on the corner of Seventeenth and Cherry Streets, and that they bought said whisky found

on them from him Saturday night before, to take to Gainesville—a prohibition city,—and that about twenty-five minutes before train time, just before they were arrested, they went to appellant's residence for Willie to get money to make the trip on, but that appellant was not at home "as far as I saw" and he and Willie were arrested as they started away. He claimed he paid appellant $2.75 on the whisky when he bought it Saturday night and was to pay the balance when he returned. On cross-examination he said he could name no one who saw him with the whisky from the time he claimed he bought it till he was arrested. Appellant testified he usually sold the half pint bottles of whisky at 30 cents per bottle, but he sold these twelve bottles to Lovey cheaper,— for $2.75 for the twelve bottles. That when he settled with him that Saturday night he deducted the price of the whisky from Lovey's week's wages and "paid him the balance in cash." That he sold no part of it to him on credit, and Lovey had no part of it charged to his account. Appellant did not have Willie Slaughter to testify at all, nor did he testify to selling any whisky to Willie that Saturday night.

The evidence was clearly sufficient to sustain the conviction

It seems appellant made an oral motion to quash the information. At any rate, after the trial, he made a motion in arrest of judgment on these grounds: (1) The information did not affirmatively allege he had *engaged in the business* of selling such liquor without a license. (2) It did not allege the *particular place* in Tarrant County where he made said sale. (3) It did not affirmatively allege such sale at a place in said county other than where he was licensed to sell.

The information, after the usual heading, alleges that appellant "heretofore, on the 18th day of April, A. D. 1915, in the County of Tarrant and State aforesaid, without having first obtained a license under the laws of the State of Texas as a retail liquor dealer, did then and there in a certain locality in said county and State where local option was not then and there in force, unlawfully sell, directly and indirectly, to one Phil Gibson intoxicating and spirituous liquors capable of producing intoxication in quantities of one gallon and less, towit: two half pints of whisky, against the peace and dignity of the State."

The statute (P. C., 611) is: "No person shall, directly or indirectly, sell spirituous or vinous liquors, capable of producing intoxication, in quantities of one gallon or less, without taking out a license as a retail liquor dealer. Any person who shall violate the provisions of this article shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than five hundred dollars nor more than one thousand dollars, and by imprisonment in the county jail for a term not to exceed six months."

It will be noted the statute says, "No person shall, directly or indirectly, *sell,*" etc., without taking out a license, not that "no person shall *engage in the business.*" If the Legislature had intended not to make it an offense merely to *sell* without a license, but instead had in-

Vol. 77 Crim.-33

tended to make it an offense only "to engage in the business," etc., it could and would have said so in clear and unmistakable language. But the language is clear and unequivocal that no person shall *sell* without a license—is the offense. This court has already decided appellant's first ground against him, and correctly so, in Trezevant v. State, 66 Texas Crim. Rep., 172, 145 S. W. Rep., 1191.

That the Legislature intended to make it an offense to merely *sell* without license, is made manifest when we consider the former law. It was (Wh. P. C., art. 411a), "any person . . . who shall *engage in the* sale of" liquor, etc., "without having obtained license therefor," etc.

We will discuss his other grounds together. The law requires a person, when applying for license to sell liquor in non-prohibition territory to expressly state the exact location where his business is to be conducted, giving the number of street, etc. (R. S., 7435 and 7446), and the license if granted is issued to him to sell there and *nowhere else.* He is expressly prohibited from carrying on his business—selling—elsewhere than the exact place his license authorizes. (P. C., 614; R. S., 7433; Loicano v. State, 72 Texas Crim. Rep., 518, 163 S. W. Rep., 64.)

Besides other statutes prescribing what allegations shall be sufficient in an indictment and information we have this special one on selling liquor (C. C. P., 464) : "In an indictment (or information) for selling intoxicating liquors in violation of *any law* of this State, *it shall be sufficient* to charge that the defendant sold intoxicating liquors *contrary to law,* naming the person to whom sold, without stating the quantity sold; and under such indictment (or information) any act of selling in violation of law may be proved."

Some of the other statutes applicable are (C. C. P., 453) : "The certainty required . . . is such as will enable the accused to plead the judgment . . . in bar of any prosecution for the same offense," and (art. 460) "An indictment (or information) for any offense . . . shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged and enable the court on conviction to pronounce the proper judgment."

In our opinion the said information fully meets each and all of these statutes, and is clearly sufficient. It follows substantially, and practically literally, the statute (P. C., 611) prescribing the offense, which is itself generally sufficient. (Wh. Ann. C. C. P., secs. 344, subdiv. 2, and 347, and cases cited.) In addition, it specifically avers the date of the particular sale, "on the 18th day of April, 1915." It does not even say on "or about" said date. It also avers sufficiently the place, "in the County of Tarrant," said State. It also avers the particular person to whom the sale was made, "Phil Gibson," the quantity of liquor, "two half pints," and the particular kind of liquor, "whisky"; and that "without having first obtained a license under the laws of the

State of Texas, as a retail liquor dealer, did then and there in a certain locality in said county where local option was not in force, *"unlawfully sell,"* etc.

It was wholly unnecessary for the pleading herein to allege the specific place in Tarrant County where appellant made said sale, and that that place was not the specific place where he was licensed to sell. Nor was it necessary for the pleading to allege, in another form, that appellant had a license to sell at a particular place only, giving it, but that the unlawful sale alleged was not at that place but elsewhere, naming it. It is true the pleader might have made these allegations. So it is true in every such pleading, the pleader might allege much more of the details of the offense than is always done. But because that is not done does not render the pleading bad if it contains sufficient, as was done in this case to comply with the statutes prescribing the requisites of such pleading. Clark v. State, 76 Texas Crim. Rep., 348, 174 S. W. Rep., 354; Wilson v. State, 61 Texas Crim. Rep., 628; Sprague v. State, 44 S. W. Rep., 837; Lowe v. State, 4 Texas Crim. App., 34; Slack v. State, 61 Texas Crim. Rep., 372; Beaty v. State, 72 Texas Crim. Rep., 634, 162 S. W. Rep., 877; Brown v. State, 74 Texas Crim. Rep., 498, 168 S. W. Rep., 861, and cases therein cited; White v. State, 11 Texas Crim. App., 476; Carter v. State, 29 Texas Crim. App., 2.

The judgment will be affirmed.

. *Affirmed.*

[Rehearing denied November 3, 1915.—Reporter.]